# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JULIE M.,[1]

                                         Plaintiff,

        v.                                              8:23-CV-518
                                                        (MJK)

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.

---

LAWRENCE D. HASSLER, ESQ., for Plaintiff
HEETANO SHAMSOONDAR, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 5). Both parties filed briefs (Dkt. Nos. 9, 13), which the court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision And Order will identify the plaintiff using only her first name and last initial.

## I.  PROCEDURAL HISTORY

On July 31, 2019, plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning January 1, 2019.  (Administrative Transcript ("T.") 15, 94, 95). Plaintiff's applications were denied initially on December 6, 2019 (T. 15, 164-83), and upon reconsideration on December 26, 2020 (T. 191-214). On August 4, 2021, Administrative Law Judge ("ALJ") Robyn L. Hoffman conducted a hearing during which plaintiff testified.  (T. 38-63). On October 13, 2021, the ALJ issued an order denying plaintiff's claim.  (T. 15-28). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 14, 2023.  (T. 1-3).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standards

To be considered disabled, a plaintiff seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

2

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013*)*; *see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian,* 708 F.3d at 418.   However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden shifts to the Commissioner to prove the final step. *Id.*

## B.   Scope of Review

In reviewing a final decision of the Commissioner, a court "is limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)) (internal *Selian,* 708 F.3d at 417 quotation marks omitted); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d

443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.*  However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also Selian,* 708 F.3d at 417 ("the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that

supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>FACTS</u>

Plaintiff was approximately 35 years old on the alleged disability onset date in 2019.  (T. 38). She earned a high school degree. (T. 46). At the time of her administrative hearing in 2021, plaintiff lived alone in a second-floor apartment. (*Id.*). Plaintiff was single and did not have any children. (*Id.*).

Among other prior employment, plaintiff had experience working as a dog groomer and generally taking care of animals. (T. 42-43). Plaintiff testified that she had worked in a full-time capacity until approximately December 31, 2018, at which time she felt she could no longer maintain employment due to a herniated disk, a dislocated tailbone, hearing problems and a mental health condition. (T. 46-47).

Plaintiff testified that the pain in her back is constant and that her herniated disc could not be surgically repaired. (T. 47). Plaintiff further testified that her tailbone could be removed, but doing so would not alleviate her back pain. (*Id.*). Plaintiff testified that while she was working, the pain in her back "would go down her legs . . . and down [her] sciatic nerve." (*Id.*). Although plaintiff testified that she still had pain and stiffness in her back, the pain in her legs stopped when she no longer worked. (*Id.*). In terms of treatment, plaintiff testified that she has done physical therapy and has had "different types of epidural injections for blocking the pain, but they've stopped working." (T. 48). Plaintiff also testified that she takes hydrocodone and 1500 milligrams of Tylenol twice daily, which medications make her tired and "mess with her concentration once in a while." (T. 48-49).

With respect to plaintiff's bipolar disorder, plaintiff testified that she cries all the time and that it is difficult for her to control her emotions in "high stressful areas." (T. 52). The medicine for plaintiff's bipolar disorder makes her "confused sometimes" and also makes it difficult for plaintiff to concentrate and to remember numbers and dates. (*Id.*).

Plaintiff testified that she cannot comfortably lift more than ten pounds and cannot sit in one place for more than 15 to 30 minutes without moving. (T. 55). Plaintiff further testified that she cannot stand in one place for more than "maybe 15 minutes" and can "maybe [walk] about two blocks before it really starts to hurt." (*Id.*). Plaintiff testified that she can "barely" wash her dishes, that she usually uses the microwave to cook, and that doing the laundry "really hurts." (T. 56). Plaintiff also testified no one helps her with grocery shopping. (*Id.*).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  (T. 15-28). Rather than reciting this evidence, the court will discuss the relevant details below as necessary to address the issues raised by plaintiff.

## IV.   <u>THE ALJ'S DECISION</u>

The ALJ determined at step one of the sequential evaluation that plaintiff met the insured status requirements of the Social Security Act through June 30, 2016, and had not engaged in substantial gainful activity since her alleged onset date of January 1, 2019.  (T. 18). Next, the ALJ found that plaintiff has the following severe impairments: degenerative disk disease of the lumbar spine, bilateral hip bursitis, coccydynia and bipolar disorder. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 19).

6

Next, the ALJ found that plaintiff had the residual functional capacity ("RFC"):

> to perform a range of light work, as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit for six hours; and stand or walk for six hours, all in an eight-hour workday, with normal breaks. The claimant should avoid working at unprotected heights; climbing ladders, ropes, or scaffolds; and working in close proximity to dangerous machinery or moving mechanical parts of equipment. She can occasionally climb ramps or stairs. The claimant can perform occasional balancing on uneven terrain, but is not limited in the ability to maintain balance on even terrain. She can perform occasional stooping, kneeling, crouching, and crawling. The claimant retains the ability to: understand and follow simple instructions and directions; perform simple tasks independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact appropriately with all others to the extent necessary to carry out simple tasks. The claimant can handle simple, repetitive work-related stress, in that she can make occasional decisions, directly related to the performance of simple tasks, in a position with consistent job duties, that do not require her to supervise or manage the work of others.

(T. 21).

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*). The ALJ further noted that she fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of

7

these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 22).

At step five, the ALJ elected to use the expedited vocational assessment provided for under 20 C.F.R. §§ 404.1520(h) and 416.920(h), making it unnecessary to determine whether plaintiff's past relevant work is skilled or unskilled. (T. 26). Considering the plaintiff's age, education, and RFC, the ALJ relied on the Medical-Vocational Guidelines, in conjunction with Social Security Rulings ("SSRs") 83-14 and 85-15, in determining that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  (T. 26-27). Accordingly, the ALJ concluded that plaintiff was not disabled. (T. 27).

## V.     ISSUES IN CONTENTION

Plaintiff argues that remand is warranted because the ALJ made numerous determinations that are not supported by substantial evidence and that the ALJ failed to apply the correct legal standards. Specifically, plaintiff contends that the ALJ erred by failing to:

> 1)      properly assess the effects of plaintiff's limitations in mental functioning, regardless of etiology, on her ability to sustain full-time work;
>
> 2)      explain or support her rejection of two treating source statements; and
>
> 3)      call a vocation expert ("VE") to testify regarding the effects of plaintiff's non-exertional limitations on her occupational base.

(Plaintiff's Brief (Pl. Br.) pg. 1).

Defendant contends that the Commissioner's determination should be affirmed because there is substantial evidence to support ALJ's RFC finding as well as her step

five finding, thereby negating the need for a vocational expert. (Defendant's Brief (Def. Br.) pgs. 4-12).

For the reasons stated below, the court finds that the ALJ's step three analysis was supported by substantial evidence. The court further finds that the ALJ's evaluation of the two treating source statements was supported by substantial evidence. However, the court finds that the ALJ erred in failing to call a vocational expert or otherwise sufficiently support her conclusion that plaintiff's non-exertional limitations did not significantly limit her ability to perform unskilled work. Therefore, this court remands for further administrative proceedings by the Commissioner in order to reach a step five determination that is supported by substantial evidence.

## VI.  __LISTED IMPAIRMENT__

### A. Legal Standard

At step three of the sequential analysis, the ALJ must determine if a plaintiff suffers from a listed impairment. 20 C.F.R. §§ 404.1520, 416.920. *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019). "Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does

9

not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *See Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

### B. Analysis

Plaintiff contends that the ALJ's step three analysis is deficient and requires remand because the ALJ presented a "somewhat conclusory and unsupported assessment of the so-called 'paragraph B' criteria . . . ." (Pl. Br. p. 15). Plaintiff further argues that the ALJ's errors at step three tainted the ALJ's subsequent RFC analysis. For the following reasons, the court finds that the ALJ properly considered plaintiff's impairments in conjunction with the Listings and reasonably concluded that her impairments did not meet or medically equal a listing singly or in combination.[2]

At issue here is listing 12.04 (depressive, bipolar, and related disorders), which the ALJ specifically addressed in her decision. (T. 19). To meet this listing, a plaintiff must establish the criteria of paragraphs A and B or the criteria of paragraphs A and C. *See* 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.04. The paragraph A criteria requires medical documentation of either a depressive disorder or bipolar disorder. *Id.* To satisfy

---

[2] Plaintiff's RFC argument is addressed later in this decision, in conjunction with the court's analysis of the ALJ's determination at that step of the sequential evaluation.

the paragraph B criteria, a claimant's mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning which includes: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself. *Id*. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.[3]

In her decision, the ALJ explicitly discussed each of the paragraph B criteria. First, the ALJ determined that plaintiff had a moderate limitation in understanding, remembering, and applying information. (T. 19). This area of mental functioning refers to the claimant's ability to learn, recall, and use information to perform work activities. *See* 20 C.F.R. § 404, Subpart P, App. 1, § 12.00(E)(1). The ALJ considered plaintiff's medical records which included notations of difficulties in understanding and memory, but which also described plaintiff's cognition and memory as intact. (T. 19, 499, 505). The ALJ also cited the consultative report of Dennis M. Noia, Ph.D., who found plaintiff's recent and remote memory to be intact. (T. 19).

---

[3] "Paragraph C" requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *Id*. § 12.00(A)(2)(c).  Plaintiff does not challenge the ALJ's assessment of the Paragraph C criteria.

Next, the ALJ concluded that plaintiff had a moderate limitation in the domain of interacting with others. This area of mental functioning refers to the claimant's ability to relate and work with supervisors, co-workers, and the public. 20 C.F.R. § 404, Subpart P, App. 1, § 12.00 (E)(2). In support of her determination, the ALJ noted plaintiff's depressive symptoms including dysphoric moods and irritability. (T. 20). The ALJ also noted that during one evaluation, Dr. Noia reported that plaintiff displayed a depressed and slightly tearful affect, but at another exam, observed plaintiff to be relaxed and comfortable. (T. 20). Plaintiff also stated that she relates well with friends and family and has never lost a job because of interpersonal difficulties. (T. 20).  Care providers have described plaintiff as polite and cooperative. (T. 20, 861, 925).

The ALJ then considered the third functional area of concentrating, persisting, or maintaining pace. In this domain, the ALJ determined that plaintiff had a moderate limitation. The ALJ noted that plaintiff has difficulty paying attention and that it "takes her a long time to finish what she starts." (T. 20, 98).  On the other hand, the ALJ noted Dr. Noia's findings that plaintiff's attention and concentration were intact, a finding that her care providers have also made. (T. 899). Dr. Noia also reported that plaintiff's thought processes were coherent and goal-oriented, with no indication of any sensory or thought disorder. (T. 20).

Last, the ALJ considered the fourth functional area of adapting or managing oneself. The ALJ determined that plaintiff had a moderate limitation in this domain.

According to the ALJ, plaintiff reported crying spells and fatigue. (T. 20). At times, plaintiff experienced "flight of ideas and an increase in goal-oriented activity." (*Id.*). Despite plaintiff's impairments, plaintiff reported that she is able to dress, bathe, and groom herself. (*Id.*). Plaintiff is also able to cook, do general cleaning, launder her clothes, and manage her own finances. (T. 20, 395-96, 672, 879).

The ALJ's finding that plaintiff's mental impairment did not satisfy the paragraph B criteria is supported by substantial evidence. Specifically, the ALJ's analysis is supported by treatment notes, plaintiff's statements, and medical opinions of record. *See Beau M. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1170 (ATB), 2020 WL 586868, at *5 (N.D.N.Y. Feb. 6, 2020) (finding substantial evidence consisting of plaintiff's testimony, intact daily activities, observations from his physicians, and consultative examination results supported the ALJ's paragraph B analysis of no more than moderate limitations in any domain); *see also Wayne P. v. Kijakazi*, No. 8:22-CV-653 (ATB), 2023 WL 3949877, at *5-6 (N.D.N.Y. June 12, 2023) (ALJ's listing determination at step three was supported by substantial evidence where the ALJ explicitly discussed each of the paragraph B criteria and cited evidence in the record supporting each consideration).

For all of the above stated reasons, the court finds that the ALJ's step three findings are supported by substantial evidence and were not the result of legal error. Accordingly, remand is not warranted on this basis.

13

## VII.   **RFC/EVALUATION OF MEDICAL EVIDENCE**

### A.   **Legal Standards**

#### 1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at \*2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at \*2)); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at \*12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at \*8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

14

An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens,* 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v. Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F.2d at 587). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527 (d)(2)). Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

## 2.    Evaluation of Medical Opinion Evidence

According to the applicable regulations,[4] the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)(2017).  The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Carmen*

---

[4] The regulations regarding the evaluation of medical evidence were amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

*M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at \*4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinions with objective medical evidence and supporting explanation.)"

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at \*6 (S.D.N.Y. Jan. 29, 2021) ("Simply put, consistency is an all-encompassing inquiry focused on how well a medial source is supported, or not supported, by the entire record.") *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

An ALJ must also consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

**B.  Analysis**

The court rejects plaintiff's argument that the ALJ failed to properly evaluate the opinions of her treating sources. The record reflects that the ALJ properly evaluated the supportability and consistency factors as to the opinions of Dr. Brown and Dr. Asar, and permissibly determined that the opinions of plaintiff's treating sources were less persuasive than those of the state agency medical consultants, and to some extent, the

consultative examiners. The court further disagrees with the plaintiff's argument that the ALJ failed to incorporate plaintiff's mental limitations into the RFC, despite her findings of "moderate" mental limitations in the paragraph B analysis.

### 1. Mental Impairment Medical Evidence

#### a. Dr. Asar

Dr. Asar, a psychiatrist, has treated plaintiff's bipolar disorder since approximately 2016. (T. 498). On March 2, 2021, Dr. Asar completed a Mental Residual Functional Capacity Assessment. (T. 909-11). In a checkbox form, together with transcribed reports, Dr. Asar submitted his opinion of plaintiff's capacity to sustain various mental activities over a normal workday and workweek, on an ongoing basis. (*Id.*). Relevant here, Dr. Asar specifically opined that plaintiff was "markedly limited" in her abilities to understand and remember complex instructions; carry out complex instructions; make judgments in complex work-related decisions; interact appropriately with supervisors; interact appropriately with co-workers and respond appropriately to usual work situations and to changes in a routine work setting. (*Id.)*. Dr. Asar concluded that plaintiff is unable to work due to her bipolar disorder. (T. 910).

The ALJ explicitly discussed Dr. Asar's opinion in her written decision, first recognizing that Dr. Asar had a "longstanding treating relationship" with plaintiff. (T. 25). However, the ALJ further noted that the marked limitations identified by Dr. Asar were extreme and inconsistent with the overall record, citing to specific medical records to illustrate her point. (*Id.*). The ALJ determined that Dr. Asar's opinion was less persuasive than that of Dr. Juriga. (T. 25, 26).

18

### b. Dr. Juriga

The ALJ also considered the opinion of state agency consultant Michael Juriga, Ph.D., who identified moderate limitations in all four broad areas of mental functioning. (T. 110). Dr. Juriga opined that plaintiff can understand and remember simple instructions and procedures, sustain a normal workday and workweek, and maintain a consistent pace. (T. 122). Dr. Juriga further noted that while plaintiff may benefit from an environment free from intensive interaction with the public, plaintiff appears capable of routine interactions with coworkers and supervisors. (*Id.*). Finally, Dr. Juriga found that plaintiff exhibits some difficulty with adaptation but can cope with basic changes and can make routine decisions. (*Id.*).

The ALJ found Dr. Juriga's report to be persuasive because he is a mental health expert and supported his assessment with a detailed explanation, including citations to objective findings of record. (T. 25).

### c. Dr. Noia

Consultative psychiatrist Dr. Noia examined plaintiff twice and recorded generally benign examination results each time. (T. 670-73, 877-80). Dr. Noia did not identify any restrictions in his September 25, 2019 examination of plaintiff. (T. 670-73). Dr. Noia did, however, refer to some moderate limitations during his December 15, 2020 examination regarding regulating emotions, controlling behavior and well-being. (T. 879).

The ALJ did not find Dr. Noia's opinions to be persuasive because there was evidence in the record to document restrictions in plaintiff's mental functioning, even if the restrictions did not rise to the level of total disability. (T. 26).

#### d.  Dr. Momot-Baker

State agency reviewer Margaret Momot-Baker, Ph.D. opined that plaintiff's bipolar disorder did not rise to the level of a severe impairment. (T. 71, 86). Dr. Momot-Baker also found that plaintiff's insight and judgment were good and that her attention/concentration were intact. (*Id.*).

The ALJ did not find Dr. Momot-Baker's opinions to be persuasive because there was evidence in the record to document restrictions in plaintiff's mental functioning, even if the restrictions did not rise to the level of total disability. (T. 26).

### 2.  Physical Impairment Medical Evidence

#### a.  Dr. Brown

On February 11, 2020, care provider Dr. Brown reported that plaintiff could not sit and/or stand for more than one hour at a time without interruption. (T. 750). Plaintiff could, however, sit for five hours each day. Dr. Brown further noted that plaintiff could occasionally lift and carry no more than ten pounds and did not need a cane to ambulate. (T. 749-50). Dr. Brown's February 11, 2020, report also noted postural and environmental limitations. (T. 752-53). The February 11, 2020, report indicated that plaintiff could care for her personal hygiene, shop for herself, use public transportation, climb a few steps at a reasonable pace, prepare a simple meal and feed herself. (T. 754).

In 2021, Dr. Brown submitted a second report indicating a reduced ability to stand without interruption. (T. 887). Dr. Brown noted that plaintiff could only sit for one hour without interruption and could not stand and/or walk for more than thirty minutes each day. (T. 887). Dr. Brown did indicate a greater ability to lift and carry than in her prior opinion. (T. 25, 888).

The ALJ found that Dr. Brown's statements had some persuasive value based

upon a longstanding treating relationship. (T. 25). Nevertheless, the ALJ ruled that the limitations Dr. Brown noted were extreme and inconsistent with her own progress notes. (T. 25).

### b. Dr. Naroditsky

State agency medical consultant Dr. Svetlana Naroditsky opined that plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. (T. 74). Dr. Naroditsky also found that plaintiff could stand and/or walk for about six hours each workday (with normal breaks) and could sit for approximately six hours in an eight-hour workday (with normal breaks). (T. 74). Dr. Naroditsky further opined that plaintiff remains capable of light exertion, subject to some additional restrictions in postural motions and hearing. (T. 24).

The ALJ determined Dr. Naroditsky's findings to be persuasive because her opinions were supported by relevant medical evidence of record. (T. 24).

### c.  Dr. Lorensen

Consultative internist Dr. Elke Lorensen examined plaintiff in 2019 and 2020. In 2019, Dr. Lorensen noted that plaintiff could walk on her toes without a problem, shop once a week (but needs help putting the groceries away), cook seven days per week, and shower and dress daily. (T. 675). Dr. Lorensen also noted that plaintiff's spine flexion was limited. (T. 677). Dr. Lorensen concluded that plaintiff had no gross limitations sitting, standing, walking, or handling small objects with her hands. Dr. Lorensen did, however, opine that plaintiff had moderate limitations for bending, lifting, and reaching. (*Id.*).

21

In December 2020, Dr. Lorensen indicated that plaintiff did not appear to be in any acute distress and that her gait was normal. (T. 873). Dr. Lorensen did note a reduced range of lumbar spine flexion. (*Id.*). Dr. Lorensen concluded that plaintiff had no gross limitations for sitting, standing, walking, or using her hands. Dr. Lorensen did, however, find that plaintiff had moderate limitations for bending, lifting, and carrying. (T. 875).

The ALJ found Dr. Lorensen's reports somewhat persuasive because her opinions were generally consistent with her in-person examination findings and the overall record. (T. 24).

### d.  Dr. Siddiqui

State agency consultant Dr. Sazzadul Siddiqui opined that plaintiff could occasionally lift ten pounds and stand/or walk (with normal breaks) about six hours in an eight-hour workday. (T. 114-15). Dr. Siddiqui further concluded that plaintiff could sit (with normal breaks) for approximately six hours in an eight-hour workday. (T. 25,115). Dr. Siddiqui opined that plaintiff was limited to occasionally performing various postural limitations and that plaintiff did not have any manipulative limitations. (T. 115-16).

The ALJ found Dr. Siddiqui's opinion somewhat persuasive, noting that plaintiff's exertional abilities were underestimated. (T. 25).

### 3. Medical Opinion Evaluation

#### a. Supportability

In challenging the sufficiency of the ALJ's evaluation of Drs. Asar and Brown, plaintiff contends that the ALJ's assessment of the supportability factor was flawed. Again, "supportability, under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *16 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (internal quotations and citations omitted). "[T]he strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Rosario v. Comm'r of Soc. Sec.*, No. 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022) (quoting *Vellone,* 2021 WL 319354*,* (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

Here, the court can glean the ALJ's consideration of the evidence and explanations offered by plaintiff's treating providers to support their restrictive opinions, even if she did not explicitly reference the term "supportability" in her analysis. With respect to Dr. Brown's opinion, the ALJ noted that the provider's opinions were completed with plaintiff's assistance, "decreasing the report's value as objective accounts of the [plaintiff's] remaining abilities." (T. 25). In drawing this conclusion, the ALJ necessarily considered the basis of support for Dr. Brown's assessment, and the extent to which that support was objective medical evidence or

otherwise. *See Alice M. W. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1122 (DEP), 2022 WL 833566, at *7 (N.D.N.Y. Mar. 21, 2022). The ALJ's consideration of the lack of objective evidence supporting Dr. Brown's opinion was supported by substantial evidence in this regard.

With respect to Dr. Asar, the ALJ cited to the psychiatrist's restrictive limitations contained in her opinion rendered on April 16, 2019 as compared to her own mental status examination findings from the same day, evidencing among other things that plaintiff did not have any issues in understanding, remembering, and communicating her needs and wants to others, and that her cognition, memory, and speech were assessed to be normal.  (T. 25-26). From this, the court can glean that the ALJ considered the supportability of Dr. Asar's opinion and found it lacking, because it did not appear to be based on any of Dr. Asar's contemporaneous findings upon examination. *See Ricky L. v. Comm'r Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) ("[I]insofar as the Court can adequately 'glean' how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion, the Court finds the ALJ's procedural error harmless as 'the substance of the [regulation] was not traversed.' ")(citations omitted). This was a proper consideration for the ALJ in assessing the supportability of Dr. Asar's opinion.

24

### b. Consistency

The court further rejects plaintiff's contention that the ALJ's consideration of the consistency factor with respect to plaintiff's treating providers was flawed. (Pl. Br. at 20). As previously discussed, consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022). An ALJ is "expressly authorized-indeed, required-to consider whether [a physician's] opinion [is] consistent with the entire record." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422, 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022) (internal quotations omitted).

With respect to Dr. Brown, the ALJ noted that her opinions were inconsistent with her own progress notes, as well as the record as a whole. The ALJ's detailed summary of plaintiff's treatment history, provided in an earlier section of the written decision, highlights the evidence upon which the ALJ rendered this consistency assessment. *See Disotell v. Comm'r of Soc. Sec.*, No. 7:16-CV-0480, 2017 WL 3491851, at *7 (N.D.N.Y. Aug. 14, 2017) (ALJ provided "ample rationale" to support her determination that medical opinion was inconsistent with medical evidence in the record where, "elsewhere in the decision," the ALJ outlined specific treatment notes and other objective medical evidence which was inconsistent with the restrictive

25

limitations opined) (citing *Mongeur v. Heckler*, 722 F.2d at 1040)  (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered").

Specifically, Dr. Brown's own physical examination findings in March 2019, October 2019 and February 2020 were unremarkable. (T. 705, 764, 768). Likewise, Dr. Thiyagarajah's February 25, 2020, treatment notes indicated that Plaintiff had a normal gait, full muscle strength, normal back curvature, full range of motion in the cervical spine, functional range of motion in the extremities, and normal strength, bulk, and tone. (T. 795). On April 19, 2021, Megan M. O'Brien, PA-C, found that plaintiff had a normal range of motion in her spine. (T. 991). On July 2, 2021, Dr. Distefano found that plaintiff had a normal gait, walked on heels and toes, was able to climb onto the examination table without assistance, had full range of motion in the cervical and thoracic spine, and that her reflexes were grossly normal in the upper and lower extremities. (T. 1002).

The ALJ's determination that Dr. Brown's opinion was inconsistent with consultative examiner Dr. Elke Lorensen's findings and opinions is also supported by substantial evidence. (T. 24). Specifically, Dr. Lorensen evaluated plaintiff in 2019 and 2020 and each time found that plaintiff had a normal gait, did not appear to be in acute distress, had decreased range of motion in the lumbar spine, negative straight leg raise

testing, and full strength in the upper and lower extremities, and opined that she was moderately limited in the ability to lift, carry, bend, and/or reach, and had no limitations for sitting, standing, walking, or using her hands. (T. 675-77, 872-75). The ALJ supportably concluded that Dr. Lorensen's opinion was more consistent with the longitudinal record as a whole.

The ALJ's determination that Dr. Asar's findings and opinions were inconsistent with the record is also supported by substantial evidence. The ALJ considered that although plaintiff was at times found with anxious or depressed mood, mental status examination findings were otherwise unremarkable, including that she was alert, oriented, cooperative, had normal psychomotor activity, intact memory and attention, and fair insight and judgment. (T. 23-24, 482, 758, 761, 764, 810, 856, 899, 967). The ALJ also considered plaintiff's daily activities and noted that she cooked, cleaned, shopped, did laundry, cared for her personal needs, and cared for her neighbors. (T. 23, 520, 672, 879); *see also Noelle v. Comm'r of Soc. Sec.*, No. 5:15-CV-1301 (GTS/WBC), 2017 WL 9509957, at *5 (N.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 945094 (N.D.N.Y. Mar. 10, 2017) ("Here, Plaintiff's activities of daily living could reasonably support the ALJ's determination that her statements regarding the limiting effects of her symptoms were not as severe as alleged."). The ALJ noted that plaintiff reported that her bipolar symptoms were controlled with medication. (T. 23, 671).

The ALJ also considered the consistency between Dr. Asar's opinion and other opinions of record; particularly Dr. Juriga's findings that plaintiff had moderate limitations in the paragraph B criteria and that plaintiff could understand and remember simple instructions and procedures, sustain a normal workday and workweek, and maintain a consistent pace. (T. 25, 118-22). For all of the above reasons, the court declines to find error warranting remand in the ALJ's evaluation of Drs. Brown and Asar's medical opinions.

### 4.    RFC/Mental Limitations

Despite plaintiff's contentions to the contrary, the ALJ did not fail to assess how plaintiff's "documented deficits would affect her ability to sustain full time-work." (Pl. Br. p. 16). As an initial matter, it is well settled "that an ALJ is not obligated to incorporate his step three findings into the RFC." *Shari L. v. Kijakazi*, No. 8:20-CV-1266 (ATB), 2022 WL 561563 (N.D.N.Y. Feb. 24, 2022); *See also Reeves v. Comm'r of Soc. Sec.*, No. 19-CV-7755, 2020 WL 4696589, at *3 (W.D.N.Y. Aug. 13, 2020) ("The ALJ may take the same information finding of a moderate limitation for 'paragraph B' criteria and conclude that Plaintiff's functional capacity is not impaired by that moderate limitation.").  Accordingly, the ALJ did not per se err to the extent she failed to explicitly incorporate her step three findings into the RFC determination.

 Furthermore, the court finds no apparent inconsistencies between plaintiff's moderate mental limitations and the ALJ's conclusion that she could perform unskilled

work.  The Second Circuit has recognized that moderate limitations in work related functioning do not preclude a plaintiff from performing unskilled work. *See Zabala v. Astrue*, 595 F.3d at 410 ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *Whipple v. Astrue*, 479 Fed. App'x 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).

In any event, the court finds that the ALJ sufficiently incorporated her findings concerning plaintiff's mental impairments into the RFC determination.  After explicitly considering the opinion evidence of record, the ALJ proceeded to craft an RFC with specific, nonexertional limitations reflecting Dr. Juriga's opinion.  As such, remand is not warranted on this basis.

## VIII. <u>Step Five</u>

### A. Legal Standard

In step five of the sequential analysis, the burden shifts to the Commissioner, "who must produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his

experience and his training." *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

Generally, the Commissioner meets its burden at step five by resorting to the applicable

Medical-Vocational Guidelines known as the grids ("Grid").  *See Angelo Michael G.,*

2023 WL 4763792*; see also Zorilla v. Chater,* 915 F.Supp. 662, 667 (S.D.N.Y.1996).

The Grid "take[s] administrative notice of the number of unskilled jobs at various

exertional levels that exist throughout the national economy." *Erin G. v. Comm'r of*

*Soc. Sec.*, No. 1:20-CV-1595 (ATB), 2022 WL 580445, at *5 (N.D.N.Y. Feb. 25,

2022).

However, if a claimant's non-exertional impairments significantly limit the

claimant's range of work such that the impairments cause an "additional loss of work

capacity beyond a negligible one or, in other words, one that so narrows a claimant's

possible range of work as to deprive him of a meaningful employment opportunity" -

the Grid "will not adequately determine disability status," and expert testimony is

required. *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010); *see also Tiffany G. v.*

*Kijakazi,* No. 6:21-CV-385 (FJS), 2022 WL 3027144, at *9 (N.D.N.Y. July 29, 2022)

(where a claimant has non-exertional limitations that significantly limit the range of

work permitted by his exertional limitations, the ALJ is required to consult with a

vocational expert).

Although an ALJ has discretion to conclude that the Grid adequately addresses a

plaintiff's non-exertional impairments, courts in this Circuit have held that the ALJ is

obligated to explain such a finding. *See Pratts v. Chater,* 94 F.3d 34, 38-39 (2d Cir.1996) (ALJ erred by failing to "specifically articulate the non-exertional impairments that [the plaintiff] suffered" so that the court could "fathom the ALJ's rationale in relation to the evidence in the record"); *see also Bapp v. Bowen,* 802 F.2d at 606 (holding that an ALJ must consider an "intermediate question" of whether the range of work the claimant can perform is "so significantly diminished as to require the introduction of vocational testimony"); *Cruz v. Colvin,* No. 12-CV-7346, 2013 WL 3333040, at *19 (S.D.N.Y. July 2, 2013) ("If [the ALJ] treated the Grid as dispositive because he found that [the plaintiff's] non-exertional limitations did not significantly reduce, or only had a negligible impact on, [the plaintiff's] work capacity, [the ALJ] was obligated to explain that finding."); *Henriquez v. Chater,* No. 94-CV-7699, 1996 WL 103828, at *4 (S.D.N.Y. March 11, 1996) (remand required, in part, because the record "does not indicate whether the ALJ considered the relevance of expert vocational testimony and concluded that none was needed, or whether he simply skipped this step."); *Michael F. v. Saul*, No. 3:19-CV-600 (BKS), 2020 WL 5742704 (N.D.N.Y. Sept. 25, 2020) (remand required when ALJ failed to consider the "intermediate question" of whether the range of unskilled work plaintiff could perform was significantly diminished by the low stress limitations in the RFC, including a limitation on only occasional changes in work setting).

**B. Analysis**

Here, it is undisputed that plaintiff's ability to work is limited by several non-exertional impairments, as evidenced by the ALJ's RFC determination.  (T. 21). Notwithstanding the plaintiff's RFC, the ALJ determined that plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work." (T. 27). Accordingly, the ALJ in her discretion determined that the testimony of a vocational expert was "unnecessary."  (T. 27-28). Plaintiff argues that the ALJ's failure to elicit the testimony of a vocational expert, particularly in consideration of the plaintiff's various limitations in mental functioning, constituted legal error. For the following reasons, the court agrees.

In foregoing the testimony of a vocational expert and relying solely on the Grids at step five, the ALJ relied on Social Security Ruling (SSR) 85-15 which provides, in pertinent part, that "so long as an individual can perform the basic mental demands of competitive, remunerative, unskilled work, the individual may be found 'not disabled.'" SSR 85-15, 1985 WL 56857. However, the ALJ failed to consider that part of SSR 85-15 which provides:

> [t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (**on a sustained basis**) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A **substantial loss** of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding

of disability because even favorable age, education, or work
experience will not offset such a severely limited occupational base.
(Emphasis added).

More specifically, on this record, the ALJ failed to reconcile the definition of the

basic mental demands of unskilled work as set forth in SSR 85-15 ("sustained basis")

with her RFC determination that Plaintiff "can handle simple, repetitive work-related

stress, in that she can make **occasional** decisions . . . ." (T. 21) (Emphasis added).

Presumably, even the low-stress limitations identified in the RFC could significantly

limit the range of work available to plaintiff, and at least one other court in this district

has declined to reconcile the ability to perform the basic mental demands of unskilled

work on a "sustained basis" with, for example, an RFC limitation for occasional

decision making.  *See Michael F.,* 2020 WL 5742704 at *10 (the ALJ did not

sufficiently reconcile the finding that the claimant remained able to perform the basic

mental demands of unskilled work with the ALJ's limitation to only occasional

decision-making, changes in work setting, and judgment where the definition of

unskilled work in SSR 85-15 requires the ability to perform the basic demands "on a

sustained basis"); *see also Ashley P. v. Comm'r of Social Security,* No. 5:20-CV-0794

(DEP), 2022 WL 42412 (N.D.N.Y. Jan. 5, 2022) ("I find that the ALJ's explanation as

to why the mental limitations in the RFC [including occasional decision-making,

changes in work setting, and judgment] would not significantly erode the occupational

33

base of light unskilled work to be conclusory and insufficiently articulated to allow this court to assess whether his finding is supported by substantial evidence.").

In particular, the ALJ's representation that "[l]imitations associated with . . . handling stress defined as making decisions, supervising others, and managing the work of others – are either not deemed to be a basic demand of unskilled work, or are only moderate limits, and not entirely precluded," did not sufficiently explain her determination in this regard. *See Chaparro v. Colvin*, 156 F. Supp. 3d 517, 538 (S.D.N.Y. 2016) ("Courts in this district consistently have found it to be reversible error for ALJ's to rely solely on the Grids when a plaintiff has moderate psychiatric limitations resulting in nonexertional limitations.") (listing cases). The ALJ's unsupported decision to rely on the Grids is highlighted by her statement that "even the mild difficulties in maintaining social functioning reflected in the residual functional capacity **would not be expected** to significantly limit the claimant's ability to perform the basic mental demands of unskilled work (SSR 85-15)," (T. 28). (Emphasis added). The ALJ is surmising that any diminution of the occupational base resulting from plaintiff's non-exertional limitations would be nothing more than negligible.

Accordingly, the ALJ's failure to sufficiently elaborate or explain her conclusion that plaintiff's non-exertional impairments were not significant enough to warrant vocational testimony constitutes reversible error. On remand, the ALJ should "seek the opinion of a vocational expert, or alternatively, explain why the Grid can be treated as

34

dispositive under these circumstances." *Michael F.*, 2020 WL 5742704, at *10 (quoting *Hernandez v. Colvin*, No. 13-CV-3035, 2014 WL 3883415, at *16 (S.D.N.Y. Aug. 7, 2014); *see also Novaco v. Berryhill*, No. 3:16-cv-1918, 2019 WL 1404189, at *14-17 (D. Conn. Mar. 28, 2019) (remanding where the ALJ "did not articulate why she concluded that" the plaintiff's limitations - "working in a 'low stress environment with only simple tasks . . . and only occasional interactions with co-workers and supervisors' " and the "ALJ's 'conclusory' finding that the impact of his non-exertional limitations was negligible, without further explanation failed to satisfy the . . . Commissioner's obligations at Step Five").

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.


Dated:  February 16, 2024

Mitchell J. Katz
U.S. Magistrate Judge